# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# ABERDEEN DIVISION

**KEIR D. SANDERS (#139272)**                                **PETITIONER**

**v.**                                                                                 **No. 1:12CV150-SA-DAS**

**STATE OF MISSISSIPPI, ET AL.**                                 **RESPONDENTS**

## MEMORANDUM OPINION

This matter comes before the court on the *pro se* petition of Keir D. Sanders for a writ of *habeas corpus* under 28 U.S.C. § 2254. The State has responded to the petition; Sanders has filed a traverse, and the State has replied to the traverse. The matter is ripe for resolution. For the reasons set forth below, the instant petition for a writ of *habeas corpus* will be denied.

## Facts and Procedural Posture

Sanders is in the custody of the Mississippi Department of Corrections and is currently housed in the Mississippi State Penitentiary in Parchman, Mississippi. Keir Sanders was indicted for the December 29, 1985, murders of his grandmother and grandfather. The crimes occurred in Tishomingo County, Mississippi, but, when Sanders was finally apprehended (over 20 years later), the court changed the venue to Lafayette County. The proceedings in Lafayette County ended in a mistrial (hung jury), and the court changed venue again to Lee County, Mississippi. S.C.R., Vol. 4, pg. 544. There, a jury found that, with regard to the murder of his grandfather (Count I), Sanders was not guilty by reason of insanity, but had not been restored to reason and remained dangerous to the community. S.C.R., Vol. 5, pg. 704. With regard to the murder of his grandmother (Count II), Sanders was found guilty. S.C.R., Vol. 5, pg. 706. As to the conviction on Count II, Sanders was sentenced, as a habitual offender, to serve a term of life in the custody of the Mississippi Department of Corrections, without the possibility of parole. S.C.R., Vol. 5, pg. 712. Sanders is incarcerated under this sentence. Further,

on Count I, Sanders was "ordered conveyed to and confined in the Mississippi State Hospital, at Whitfield, Mississippi, or at such other state asylum for the insane as shall be determined by the appropriate officer of the state and shall remain there until he shall have been restored to sanity." *Id.* However, Sanders' confinement as to Count I was ordered "delayed until such time as it shall be invoked by this Court as a result of the defendant being discharged from custody by the Mississippi Department of Corrections from incarceration as provided in the sentence imposed in Count II of the indictment." *Id.* The sentencing order further stated:

> It is the intent of this Court that the defendant remain in the custody of the Department of Corrections for life pursuant to Sec. 99-18-[81]. I[f] for any reason, because of change in the law or otherwise, the defendant is released from Mississippi Department of Corrections custody, he shall be immediately placed in an asylum of the State of Mississippi.

*Id.* at 713.

Sanders appealed his conviction and sentence to the Mississippi Supreme Court, which assigned the case to the Mississippi Court of Appeals, where he raised the following grounds for relief, through counsel:

> I. The verdict was against the overwhelming weight of the evidence, and the trial court erred in denying Sanders' motion for a new trial.
>
> II. The trial court erred in giving the State's jury instruction on flight, as the defense provided an independent reason for Sanders' flight.
>
> III. The trial court erred in admitting gruesome autopsy photographs (Exhibits S-24, S-25, S-26) into evidence.
>
> IV. The trial court erred in ordering Sanders to serve his sentence of incarceration pursuant to Count II before Sanders could be conveyed to the State Mental Hospital pursuant to Count I.

The Mississippi Court of Appeals affirmed the trial court's acquittal by reason of insanity and order of confinement on Count I – and the conviction and sentence on Count II. *Sanders v. State*, 63

So.3d 554 (Miss. App. 2010), *reh'g. denied* July 27, 2010 (Cause No. 2008-KA-01145-COA).

Sanders sought a writ of *certiorari* in the Mississippi Supreme Court, on Issues I, II, and IV as raised in his appellate brief. On November 4, 2010, the Mississippi Supreme Court granted *certiorari* review. *Sanders v. State*, 49 So.3d 1139 (Table) (Miss. 2010)(Cause No. 2008-CT-01445-SCT). After considering the arguments of the parties, the Mississippi Supreme Court affirmed the judgment of the Court of Appeals and the Tishomingo County Circuit Court. *Sanders v. State*, 63 So.3d 497 (Miss. 2011), *reh'g. denied* June 30, 2011 (Cause No. 2008-CT-01145-SCT). Neither the state court record nor the docket of the United States Supreme Court, as available on their website, reflects that Sanders sought *certiorari* review in the U.S. Supreme Court.

After the Mississippi Supreme Court's decision, Sanders filed an application under Miss. Code Ann. § 99-39-1, *et seq*., seeking leave to proceed in the trial court with a motion for post-conviction collateral relief, raising the following grounds, *pro se*:

> I. The State denied Petitioner his right to a fair and impartial jury.
>
> II. The State subjected Petitioner to prosecutorial misconduct, vindictive and selective prosecution and as a result he was denied his constitutional rights to an impartial jury and a fair trial.
>
> III. Petitioner was denied his constitutional right to an unbiased judge and as a result also denied his right to a fair trial.

The Mississippi Supreme Court dismissed Sanders' application, holding in pertinent part:

> The panel finds that all of Petitioner's issues were raised at trial and/or on direct appeal or could have been raised and are now procedurally barred and no exceptions are applicable. Miss. Code Ann. § 99-369-21(1)-(3). The Application for Leave to Proceed in the Trial Court should be dismissed.

*Sanders v. State of Mississippi*, 2012-M-00350 (Mississippi Supreme Court order of March 28, 2012, denying Sanders' Application to Proceed in the Trial Court).

Sanders then filed a petition for writ of *habeas corpus* under 28 U.S.C. § 2254 in this court, raising the following grounds for relief, *pro se*:

Ground One: The State denied Petitioner his right to a fair and impartial jury and therefore to a fair trial.

Ground Two: The State subjected Petitioner to prosecutorial misconduct and vindictive and selective prosecution and as a result he was denied his constitutional rights to an impartial jury and a fair trial.

Ground Three: The State denied Petitioner his constitutional right to an unbiased judge and as a result also denied his right to a fair trial.

Ground Four: Petitioner received ineffective assistance of counsel from his Attorney Hunter Aikens.

Ground Five:[1] The overwhelming weight of the evidence shows that Petitioner was insane at the time of Elma Crawford's shooting as well.

Ground Six:[2] Petitioner was illegally charged and sentenced as a habitual offender.

**The Doctrines of Procedural Default and Procedural Bar**

If an inmate seeking *habeas corpus* relief fails to exhaust an issue in state court – and no more avenues exist to do so – under the doctrine of *procedural default* that issue cannot be raised in a federal *habeas corpus* proceeding. *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995). Similarly, "When a state court declines to hear a prisoner's federal claims because the prisoner failed to fulfill a state procedural requirement, federal habeas is generally barred if the state procedural rule is independent and adequate to support the judgment." *Sayre v. Anderson*, 238 F. 3d 631, 634 (5th Cir. 2001) (*citing Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 2553-54, 115 L.Ed.2d 640 (1991);

---

[1] Sanders raised this claim in one of his amendments to his petition, ECF doc. 15, pg. 16.

[2] Sanders raised this claim in another of his amendments to his petition, ECF doc. 16, pg. 3. Sanders initially included this allegation in his discussion of Ground Two before adding it as an independent allegation.

*Amos v. Scott*, 61 F.3d 333, 338-39 (5th Cir. 1995)). This doctrine is known as *procedural bar*.

### Cause and Prejudice – and Fundamental Miscarriage of Justice – As Ways to Overcome Procedural Bar

Whether a petitioner's claims are procedurally defaulted or procedurally barred, the way he may overcome these barriers is the same. First the petitioner can overcome the procedural default or bar by showing cause for it – and actual prejudice from its application. To show cause, a petitioner must prove that an external impediment (one that could not be attributed to him) existed to prevent him from raising and discussing the claims as grounds for relief in state court. *See United States v. Flores*, 981 F.2d 231 (5th Cir. 1993). To establish prejudice, a petitioner must show that, but for the alleged error, the outcome of the proceeding would have been different. *Pickney v. Cain*, 337 F.3d 542 (5th Cir. 2003). Even if a petitioner fails to establish cause for his default and prejudice from its application, he may still overcome a procedural default or bar by showing that its application would result in a fundamental miscarriage of justice. To show that such a miscarriage of justice would occur, a petitioner must prove that, "as a factual matter, that he did not commit the crime of conviction." *Fairman v. Anderson,* 188 F.3d 635, 644 (5th Cir. 1999) (citing *Ward v. Cain,* 53 F.3d 106, 108 (5th Cir. 1995)). Further, he must support his allegations with new, reliable evidence – that was not presented at trial – and must show that it was "more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Fairman,* 188 F.3d at 644 (citations omitted).

### Grounds Four and Six: Procedural Default

Sanders has never presented his allegations in Grounds Four and Six of the petition to the Mississippi Supreme Court. As he has not properly presented these claims to the State's highest court, he has denied the state a fair opportunity to pass on them, and they have been procedurally defaulted. Sanders has not shown "cause" under the "cause and prejudice" test necessary to allow the court to

reach the merits of the claims despite the procedural bar – because no external impediment prevented him from raising and discussing the claim in state court. *See United States v. Flores*, 981 F.2d 231 (5th Cir. 1993).

In some cases, attorney error may constitute cause to overcome procedural default. However, Sanders has not raised and exhausted a claim in state court that appellate counsel failed to raise the allegations in claims Four and Six; as such, he cannot use attorney error to overcome procedural default in this court. *See Edwards v. Carpenter,* 529 U.S. 446, 452, 120 S. Ct. 1587, 1591-92 (2000); *see also Murray v. Carrier,* 477 U.S. 478, 488-89, 106 S.Ct. 2639, 2645-46, 91 L.Ed.2d 397 (1986). Sanders chose not to challenge his appellate counsel's performance in his *pro se* state court post-conviction motion. Indeed, in his federal petition for a writ of *habeas corpus*, Sanders concedes, at least as to Ground Four, that he has never raised his claims of ineffective assistance of counsel in state court. He states:

> I automatically assumed that I would have a chance to raise these issues as actual grounds in my post-conviction relief petition despite the fact that my indigent appeals organization attorney Hunter Aikens refused to raise these issues as actual grounds. So I did not feel it was necessary to explain why I could not raise them.

ECF doc. 1, pg. 10. Sanders could have raised these claims in his *pro se* state post-conviction motion. Instead, he chose to raise the claims set forth above. Nothing external to him prevented him from raising his claims in Grounds Four and Six of his petition to the state court, and his procedural default of these claims must stand. As Sanders has not shown cause for his default, the court need not consider whether he would suffer actual prejudice from its application. *Martin v. Maxey*, 98 F.3d 844, 849 (5th Cir. 1996).

Neither will the court's decision to impose the procedural default as to Grounds Four and Six result in a "fundamental miscarriage of justice," *Martin,* 98 F.3d at 849 (*citing Sawyer v. Whitley,* 505

U.S. 333 (1992)), as he has not shown, "as a factual matter, that he did not commit the crime of conviction." *Fairman v. Anderson,* 188 F.3d 635, 644 (5th Cir. 1999) (citing *Ward v. Cain,* 53 F.3d 106, 108 (5th Cir. 1995)). To show that he was actually innocent, Sanders must support his allegations with new, reliable evidence – that was not presented at trial – and must show that it was "more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Fairman,* 188 F.3d at 644 (citations omitted). Sanders has not denied that he killed his grandmother and grandfather; he has simply alleged that he was legally insane at the time of both murders – a defense he used at trial. These allegations do not constitute new, reliable evidence that would demonstrate that he is actually innocent of the murder of his grandmother for which is currently incarcerated.

In addition, Sanders' argument that he is actually innocent of being a habitual offender is without substantive merit. He argues in Ground Six of his petition that one of his prior convictions cannot be used to enhance his sentence under Mississippi's habitual offender statute because he served his sentence for that conviction in a Texas county jail, rather than a state penitentiary. Sanders argument is contrary to the law, as "it would be utterly absurd . . . to reach any other conclusion than that the Legislature intended time spent in a local or county jail to count towards the term of imprisonment provided for in a sentence." *Huntley v. State*, 524 So.2d 572, 574-575 (Miss. 1988); *see also Davis v. State*, 680 So.2d 848 (Miss. 1996) ("Davis' time served in a county jail is equivalent to time served in a state penitentiary under the habitual criminal statute.") For these reasons, the court holds that Sanders has not presented new, reliable evidence showing that he is actually innocent of being a habitual offender under Miss. Code Ann. § 99-19-81.

Thus, Sanders has not shown that he is actually innocent of either the conviction and sentence that he is currently serving for Count II – or his court-ordered commitment after his acquittal by

reason of insanity for Count I. Hence, he has not shown that a fundamental miscarriage of justice would occur if the court does not consider his claims in Grounds Four and Six of the instant petition on the merits. Therefore, the allegations in Grounds Four and Six of the instant petition for a writ of *habeas corpus* will be dismissed under the doctrine of procedural default.

### Grounds One, Two, and Three: Procedurally Barred

On post-conviction collateral review, the Mississippi Supreme Court held that Sanders' allegations in Grounds One, Two, and Three of his petition were procedurally barred under Miss. Code Ann. § 99-39-21(1). In dismissing Sanders' application for post-conviction collateral relief, the Mississippi Supreme Court held that "all of [Sanders'] issues were raised at trial and/or on direct appeal or could have been raised and are now procedurally barred and no exceptions are applicable. Miss. Code Ann. § 99-39-21(1)-(3)." Sanders' claims in Grounds One, Two, and Three of the instant petition were not raised on direct appeal; as such, they are procedurally barred from post-conviction review under § 99-39-21(1), which reads:

> Failure by a prisoner to raise objection, defenses, claims, questions, issues or errors either in fact or law which were capable of determination at trial and/or on direct appeal, regardless of whether such are based on the laws and the constitution of the state of Mississippi or of the United States, shall constitute a waiver thereof and shall be procedurally barred, but the court may upon a showing of cause and actual prejudice grant relief from the waiver.

Miss. Code Ann. § 99-39-21(1). Section 99-39-21(1) is an independent state procedural bar. *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997). The adequacy of the state procedural bar depends on "whether Mississippi has strictly or regularly applied it." *Id*. (*citing Lott v. Hargett*, 80 F.3d 161, 165 (5th Cir. 1996)). Sanders has not, however, borne "the burden of showing that the state did not strictly or regularly follow a procedural bar around the time of his appeal;" he has not "demonstrate[d] that the state has failed to apply the procedural bar rule to claims identical or similar to those raised by the

petitioner himself." *Id*. Sanders has not shown "inconsistent and irregular" application of the bar; as such, his federal claims are barred under an independent and adequate state procedural rule. *Id.* at 861.

In addition, Sanders has shown neither cause nor actual prejudice in order to overcome the procedural bar. *See Coleman*, 501 U.S. at 750; *see also Martin v. Maxey*, 98 F.3d 544, 849 (5th Cir. 1996) (*citing Sawyer v. Whitley*, 505 U.S. 333(1992)). He has not shown that "something *external* to [him], something that cannot fairly be attributed to him," prevented him from presenting his claims in state court. *Coleman*, 501 U.S. at 753 (emphasis in original). Indeed, in his petition, Sanders states that he asked his appellate attorney to raise these claims on direct appeal, but counsel chose not to do so. However, when drafting his *pro se* post-conviction motion, Sanders chose not to challenge appellate counsel's performance. As such, he may not now allege ineffective appellate counsel to overcome the procedural bar applied to his claims. *See Edwards*, 529 U.S. at 451. As Sanders has not shown cause for his inaction leading to the bar, the court need not consider whether he would suffer actual prejudice from its application. *Martin*, 98 F.3d at 849.

Further, the court's decision not to consider the merits of Sanders' claims in Grounds One, Two, and Three of the petition, will not result in a "fundamental miscarriage of justice," as Sanders has not presented this Court with new, reliable evidence to demonstrate that he is actually innocent of the murder of his grandmother (the sentence he is currently serving), or that his ordered confinement for the killing of his grandfather was improper. *Martin,* 98 F.3d at 849. Indeed, Sanders has never denied that he killed his grandparents. For these reasons, Sanders would not suffer a fundamental miscarriage of justice from the court's decision to apply the procedural bar to Grounds One, Two, and Three of the instant petition. As such, these grounds for relief will be dismissed under the doctrine of

procedural bar.

## Ground Five: Reviewed on the Merits in State Court

The jury found that Sanders was not legally insane when he murdered his grandmother. Sanders alleges in Ground Five that the jury's finding was against the overwhelming weight of the evidence. He raised this issue on direct appeal, and the Mississippi Supreme Court denied the claim on the merits. A challenge to the weight of the evidence is not, however, a valid claim for federal *habeas corpus* review. *Young v. Kemp,* 760 F.2d 1097, 1105 (11th Cir. 1985), *cert. denied*, 476 U.S. 1123, 106 S.Ct. 1991, 90 L.Ed.2d 672 (1986); *see also Thompson v. Holman,* 2013 WL 435972 (S.D. Miss. January 16, 2013) (slip copy) (citing *Young, supra,* and finding that federal court has no power to grant *habeas corpus* relief on a claim challenging the weight of evidence); *Johnson v. Streeter,* 2012 WL 3683392 (N.D. Miss. August 21, 2012) (same); *Jordan v. Epps,* 2012 WL 5997046 (S.D. Miss. August 8, 2012) (same); *Baskin v. Scott,* 2012 WL 5947647 (S.D. Miss. June 25, 2012) (same). The jury weighs the evidence, and, if it is lacking, the remedy is a new trial. In addition, "differences in opinion go to the weight of the evidence, and such disputes are within the province of the jury to resolve." *Bowman v. Cain,* 182 F.3d 913, 1999 WL 422872 (5th Cir. 1999) (unpublished) (citing *Weeks v. Scott,* 55 F.3d 1059, 1063 (5th Cir. 1995) ("Simply put, differences in opinion go to the weight of the evidence, not to its admissibility, and such disputes are within the province of the jury to resolve.") As such, Sanders' challenge to the weight of the evidence is simply not a valid claim for *habeas corpus* review.

Using a liberal interpretation of Sanders' petition, as required under *Haines v. Kerner*, 404 U.S. 519 (1972), the court will also construe Ground Five as a challenge to the sufficiency of

the evidence. A federal court may consider the sufficiency of the evidence on *habeas corpus* review, but a petitioner may only prevail on that claim where the evidence, viewed in the light most favorable to the prosecution, is such that no rational finder of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307 (1979). At trial, the defendant may challenge the sufficiency of the evidence by a directed verdict or a judgment *non obstante veredicto* ("JNOV"), and, if the court grants relief, the case is dismissed. The Mississippi Supreme Court examined the evidence against Sanders on *certiorari* review – and set forth a detailed summary, *Sanders*, 63 So.3d 497:

> Mississippi follows the *M'Naghten* Rule for determining legal sanity. Under the *M'Naghten* Rule, a defendant may not be held criminally liable for his actions at the time of the alleged crime if he "was laboring under such a defect of reason from disease of the mind that either (a) he did not understand the nature and quality of his act, or (b) if he did understand the nature and quality of his act, he did not appreciate that the act was wrong."

*Sanders*, 63 So.3d at 504, *citing Stamper v. State*, 803 So.2d 1194, 1197 (Miss. App. 2000). The state court summarized the evidence regarding Sanders' sanity at the time he murdered his grandmother as follows:

> *All three experts testified that they believed Sanders to have understood the nature and quality of his acts at the time*. There is no indication in the record anywhere that Sanders did not understand that he was killing another human being. The only question is whether the evidence preponderates heavily against the jury's necessary determination that Sanders knew that the killing of his grandmother was wrong. On this point, there was conflicting evidence.
>
> Dr. John McCoy, who treated Sanders at Mid-South, testified that Sanders was "the most mentally-ill patient" at the hospital and that he thought Sanders did not know right from wrong when he killed the Crawfords. Dr. Mark Webb testified that Sanders's paranoia had prevented him from understanding that his actions were wrong.
>
> On the other hand, Dr. McCoy testified that Sanders had admitted that he was *not* hallucinating when he killed his grandmother. Dr. William Lott testified that, despite the fact that Sanders had not been medicated for schizophrenia for years, Sanders did

not appear to be psychotic when Lott interviewed him in 2007. Dr. Lott further testified that symptoms of schizophrenia or schizoaffective disorder can "wax and wane," so diagnosed persons have periods of lucidity and know right from wrong. *Further, the dying-declaration testimony of Elma was that her grandson had walked upstairs to her bedroom after killing her husband, had shot her, and then had hid the phone before leaving with the shotgun. Sanders then had eluded police for nearly twenty years.* These facts and evidence suggest Sanders knew his conduct was wrong.

*Sanders*, 63 So.3d at 504-505 (emphasis added). The court went on to hold:

> Despite the expert testimony of Drs. McCoy and Webb and Sanders's history of mental illness, there is reasonable evidence to conclude that Elma was slain in an effort to avoid responsibility for the death of W.D. and not in a paranoid delusion. Only after arguing with and killing his grandfather did Sanders proceed upstairs and shoot his grandmother. Then he pulled the phone from the wall and hid it under a sofa before fleeing the scene. Just because a person is schizophrenic does not mean that person is M'Naghten insane. And, while no evidence of the circumstances surrounding this tragedy suggests that Sanders was in a paranoid delusional state of mind on the morning of these killings, his calculated flight and evasion of authorities immediately thereafter show deliberation and a guilty conscience.
>
> In the past we have said that "the subjective aspects of sanity or insanity present difficult problems." [footnote omitted]. This is especially true where, as here, the defendant has a documented history of mental illness. However, the jury weighed the conflicting testimony of experts and Sanders's history of mental illness against his seemingly calculated flight. After being properly instructed regarding the burden of proving whether or not Sanders was legally sane, the jury found him guilty. To do so, the jury necessarily had to make a judgment concerning one of the most difficult questions of fact – legal sanity – with which a jury may be presented. We are in no position to make a better judgment than the jurors, so we cannot say that Sanders's conviction was against the overwhelming weight of the evidence. This issue is without merit.

Id. at 506 (emphasis added). The Mississippi Supreme Court accurately recited the M'Naghten rule, then skillfully applied it to the unique facts of this case.

The jury reached the conclusion that, on the night of the killings, Sanders was legally insane when he killed his grandfather, but was sane enough to face criminal liability when, minutes later, he went upstairs and killed his grandmother. Thus, the jury found that, in the span of about two minutes, Sanders went from legally insane to legally sane. The short span of time between these two drastically

different states of mind gives one pause. Odd as the finding seems, though, it was the jury's province to determine these facts, and the facts were supported by some evidence (though there was some conflicting evidence, as well). The Mississippi Supreme Court's determination that there was adequate evidence to support the verdict is entitled to "great weight." *Parker v. Procunier*, 763 F.2d 665, 666 (5th Cir. 1985). Viewed in the light most favorable to the prosecution, the State introduced enough evidence to sustain Sanders' conviction. *Jackson, supra*. The state court decision was well-reasoned and supported by the evidence. As such, Ground Five of the instant petition is without merit and will be denied.

## Conclusion

In sum, Grounds One, Two, Three, Four, and Six of the instant petition are either procedurally defaulted or procedurally barred, and Ground Five was decided on the merits by the Mississippi Supreme Court and cannot be reviewed in a *habeas corpus* proceeding. As such, the instant petition for a writ of *habeas corpus* will be denied. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED** this, the 29th day of April, 2015.

                                                   /s/ Sharion Aycock
                                                 **U.S. DISTRICT JUDGE**